rkers Union of America, AFL-CIO. And we'll hear first from Ms. Windholtz. Good morning, Your Honors. If it may please the Court, Diane Windholtz of the firm Jax Lewis, on behalf of Petitioner Appellant, Barnard College. Can you hear me? Yes. Thank you. Thank you. Your Honors, the issue before the Court today is whether the public policy of eradicating sexual harassment demands Mr. Randall's termination. A public safety officer of Barnard, who the arbitrator in this case determined certainly violated Barnard's harassment policy and certainly humiliated and hurt his victim. As a public safety officer, as his very title suggests, Mr. Randall played a critical role at Barnard. Barnard entrusts its public safety officers with patrolling the campus and provides its public safety officers with access to student dormitories. They are the university's first and most visible line of defense to protect the student population. Students are instructed and in fact encouraged to report any incidents of harassment or any threat to their safety to the public safety officers. To that end, Mr. Randall, like all safety officers at Barnard, are trained annually on Barnard's harassment policy. This is a critical policy that public safety officers are trained on each and every year at Barnard. Mr. Randall, like all safety officers and employees at Barnard, was expressly instructed on what constitutes sexual harassment and the consequences of engaging in the objectionable conduct, including suffering immediate discharge. During the grievance meeting, which Mr. Randall attended in his capacity as president of the union, Mr. Randall, in complete disregard of all his years of training and Barnard's express policy prohibiting harassment of any kind, publicly body-shamed a female colleague in the presence of a group of her coworkers, many of them male, and deliberately and loudly calling attention for everyone in the room to look at her chest to examine whether her blouse was low-cut. Mr. Randall's colleague understandably felt humiliated by Mr. Randall's public shaming of her and did what he was instructed to do by Barnard. She promptly reported Mr. Randall's conduct. Barnard then did what they understood to be their obligation to the students and employees for whom they are responsible. Barnard terminated Mr. Randall's employment. Mr. Randall, based on his participation in multiple trainings throughout the years regarding Barnard's harassment policy, was well aware and understood that his conduct could result in his termination. In fact, at the very time he engaged in this public body-shaming of a female colleague, Mr. Randall was on suspension for engaging in inappropriate behavior to another female employee. Mr. Randall was only permitted on campus to perform his union-related activities. The parties agreed in this case that there is no dispute that the public policy against sexual harassment is well-recognized and defined. In fact, New York State and New York City in recent years have gone to great lengths to increase awareness and protection of employees against sexual harassment. New York State and New York City have clearly recognized the tremendous harm inflicted upon anyone who has suffered from sexual harassment. To suggest that Mr. Randall needed at least one disciplinary warning and possibly multiple warnings before he could be terminated for violating Barnard's harassment policy undermines the very protections New York State and New York City have provided to employees in recent years. This Court, Your Honors, in 1991, in the case Newsday v. Long Island Typographical Union, did not mandate that an employee receive multiple disciplinary warnings for sexually harassing conduct before termination is permitted. The prior disciplinary warnings and the prior arbitration awards was a consideration by the Court. It was not a direction to all courts going forward that the offending employee must have received prior multiple disciplinary warnings. Your Honors, even if that was the test 30 years ago that required the issuance of multiple warnings, that cannot be the test today, where all employers in New York State and New York City must train their employees annually on sexual harassment and distribute and post policies prohibiting sexual harassment and advising employees of the procedures for reporting the harassment. Presumably, Your Honors, the idea of multiple warnings was to ensure that employees were aware that their misconduct could result in termination. Mr. Randall, based on his repeated training at Barnard on the sexual harassment policy and the fact that he was on suspension at the very time that he engaged in this egregious body-shaming of a female colleague, was well aware of the consequences of violating the policy. As this Court recognized in the Newsday decision, above all, the award of reinstating an offending employee prevents the employer from carrying out its legal duty to eliminate sexual harassment in the workplace. This Court, nearly 30 years ago, identified that the most critical factor above all was to analyze what an employer's legal duty to eliminate sexual harassment in the workplace. Barnard has a duty to his students and to his employees. How can Barnard fulfill their duty to eliminate sexual harassment if they are forced to reinstate Mr. Randall, someone who indisputably violated Barnard's harassment policy and humiliated his female colleagues? How can Mr. Randall be entrusted to protect Barnard's students from harassment when he himself engages in conduct in violation of the policy? How can Mr. Randall be entrusted to report complaints of harassment he receives from the students when he himself engages in conduct in violation of the policy? Mr. Randall's sexually degrading behavior toward a female colleague irreparably destroyed the trust Barnard places in Mr. Randall as a public safety officer. Excuse me, you have one more minute. Thank you. The public policy against harassment demands that Mr. Randall not be reinstated and that the arbitrator's award be reversed. Thank you, Your Honors. Thank you. Mr. Rocco. Thank you, Your Honors. May it please the Court, Matthew Rocco from Rothman Rocco LaRuffa, LLP, on behalf of the Court. Excuse me, I have a question or two. Go ahead, sorry. For the previous attorney? Yes. Hold on, Mr. Rocco. Judge Walker has questions for Ms. Windholz. Yes, my question is, what is the public policy of Barnard College in terms of any written communications to its employees about sexual harassment? And does that policy specify that termination without warning will be the penalty? Under every circumstance? It does not. The harassment policy at Barnard does not in any way say that an individual will be terminated under every circumstance. It is not a hard and fast rule that termination will result from one incident of sexual harassment. What the policy does provide is that consideration of all the circumstances, and that's consistent with what the courts require that an employer consider. But here you agreed to arbitrate, or Barnard agreed to arbitrate in a collective bargaining agreement, and the arbitrator rendered a decision that did not result in termination, but acknowledged that there was a violation of the school's policy and general policy and public policy, and ended up with Mr. Reynolds losing a year of pay and being denied his back pay, but being reinstated. And my understanding is that the back pay, the financial cost to him, was $80,000. How can you fault what the arbitrator did here? The arbitrator just reached a judgment. You had agreed with the union to have an arbitrator decide the dispute, and the arbitrator decided the dispute. So don't you have to argue that the arbitrator acted, at least in some sort of arbitrary and capricious way? I don't believe so, Your Honor. I think what we need to argue is that the arbitrator's decision was contrary to public policy, and in this case, the public policy being the eradication of sexual harassment. That may be, but there's a determination. The arbitrator reached a different remedy than the school did. And it doesn't seem to me that where the school has not announced termination as being an automatic remedy in these kinds of cases, that the arbitrator was acting in an arbitrary and capricious way by, in effect, fining this person $80,000, but allowing that person to be reinstated. Again, Your Honor, I don't believe the standard is arbitrary and capricious. I believe the standard is whether the award violates public policy. And in this case, reinstating Mr. Reynolds, given his position as a public safety officer, and given his knowledge that his conduct could result in his immediate termination, that his reinstatement is what violates public policy, because it's not consistent with Barna's obligation as an employer and as an educational institution to eradicate sexual harassment and ensure the safety of its student population. I thought the issue before the arbitrator was the nature of this particular harassment, what the appropriate penalty would be. And that's what the arbitrator decided. But anyway, I hear you. I understand what you're saying. Thank you. Thank you. Judge Kearse, any questions? No questions. Thank you. All right, we'll hear Mr. Matthew Rocco. Thank you, Your Honors. May it please the court, Matthew Rocco for appellees from Rothman Rocco LaRuffa LLP. I hope everybody is staying safe during these crazy times. Your Honors, this is a garden variety petition to confirm a private labor arbitration award. The district court on April 9, 2019, correctly confirmed that award. The arbitrator heard the matter over a four-day evidentiary hearing. And both the arbitrator and the district court concluded that Mr. Reynolds was a 23-year-old employee with no previous disciplinary history. And while the arbitrator did find that Mr. Reynolds' conduct on the date of November 14, 2017, was in violation of the employer's unilaterally implemented harassment policy, the arbitrator ruled that there was no, quote, just cause to fire him because under all the attendant facts and circumstances, the penalty of termination was too severe. Instead, the arbitrator leveled the penalty of a one-year suspension costing Mr. Reynolds approximately $80,000 in salary and benefits and a year of accrued seniority. The district court's confirmation… Excuse me. I'm sorry to interrupt here, but I just wanted to catch you on this particular point because it's unclear to me. Presumably, he has not been back at Barnard since. That is accurate. And so – and he's not being paid for his current time. And what I was wondering was whether, in effect, the – if the back pay was, in effect, denied for one year, what we do about the time after that year, after the arbitration award? Well, I think the answer to that question is that the union's position or the appellee's position is that back pay should accrue beginning from the time of Judge Hellestein's decision through the date of the appeal. I think Judge Hellestein declined to award back pay from January 2, 2019, through I believe it was April 10, 2019, but did order that Barnard immediately comply with the award and readmit Mr. Reynolds to employment through its rehiring procedures. So the union would submit that the April 10 date, 2019, would be the operative date. Right. Okay. Thank you. Yes, no problem. The employer's arguments in this case for reversing the district's court's order overreach and asked this court to craft a needlessly inflexible rule which effectively usurps the ability of the arbitrator to determine whether there was just cause in the first instance. Further, and notably at the arbitration proceeding itself, the parties, including the employer, granted the arbitrator the broadest possible latitude to decide whether Ms. Reynolds must only be fired if a violation was found, or whether he could be subjected to some lesser form of discipline when they expressly stipulated, quote, what shall be the remedy. This employer thus seeks a decision from the court negating its own stipulation, granting the arbitrator broad powers to craft the remedy in the arbitration. So there's three fundamental reasons here that the district court's order should be affirmed. The first is that federal courts have repeatedly held and recently reaffirmed in several high profile cases that their review of labor arbitration awards is narrowly circumscribed and highly deferential, among the most deferential in all the law. Here, as the district court correctly determined, the arbitration award on its face draws its essence from the collective bargaining agreement language of just cause and the stipulation of the parties and meets every standard for confirmation set forth by the Second Circuit. Second fundamental reason is the district court correctly applied controlling precedent and determined that the exceedingly narrow public policy exception does not afford a basis to vacate the award based on the undisputed facts here. As we've said all along, there's no question that there is a public policy prohibiting sexual harassment in the workplace, but the district court correctly noted that in situations like here, when a labor arbitrator finds that an individual has no prior infractions of sexual harassment, a decision from that arbitrator ordering the employee's reinstatement and explaining a rationale for that decision does not violate public policy against sexual harassment. Third, with respect to Title IX and recent modifications to longstanding New York City and New York State anti-discrimination statutes, none of those statutes or the modifications there to provide a basis for this court to toss out decades of bedrock federal labor arbitration precedent. So if New York State and New York City, through their respective legislature and city council, wanted the recent amendments to their longstanding anti-discrimination statutes to state that any demonstrated violation of a workplace harassment policy must result in automatic termination of the offending employee, they certainly could have written those amendments to say so. With regard to Title IX, this has been a law that's been on the books since 1972. So the college's inability to show a single case saying that, you know, when there's just cause and an arbitrator rules for the employee and puts him or her back to show an analogous case from 1972 for the present, that exposes the falsity of its argument that it'll be in jeopardy under Title IX. Above that, if Barnard really needed its security officers to be subject to a one-strike-you're-out harassment policy to comport with the letter or the spirit of Title IX, or frankly, because Barnard is a women's college, it should have negotiated that provision into the collective bargaining agreement at some point over the last 40 years. Instead, the standard is just cause. So this court shouldn't judicially renegotiate the party's collective bargaining agreement and usurp the ability of the impartial arbitrator to determine whether there's just cause in discharge cases. So at the end of the day, this appeal has absolutely nothing to do with Title IX obligations that have been on the books for decades, recent changes to state and city laws that have always prohibited sexual harassment, or the fact that Barnard is and always has been a women's college. Further, this appeal cannot logically be about whether the district court misapplied controlling Second Circuit precedent from Newsday because the employer concedes that Reynold had no prior infractions. Rather, the sole relevant question is whether the employer has met its quote, exceedingly high burden, unquote, to reverse the district court and vacate a final and binding private labor arbitration award under the very, very narrow public policy exception. As the district court correctly and already determined, the answer is an unequivocal and resounding no. I look forward to any of the court's questions that they may have. Thanks very much. Judge Kearse, any questions? No questions. Judge Walker? No further questions. Thanks very much. Ms. Windholz declined to reserve time for rebuttal, so we have concluded the argument, and we will take the matter under submission, and we are adjourned. Court stands adjourned.